UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| WILLARD E.,[1] | : |
| | : Case No. 3:20-cv-302 |
| Plaintiff, | : |
| | : Magistrate Judge Norah McCann King |
| vs. | : |
| | : |
| COMMISSIONER OF SOCIAL | : |
| SECURITY ADMINISTRATION,[2] | : |
| | : |
| Defendant. | : |

**OPINION AND ORDER**

Plaintiff Willard E. brings this action challenging the denial of his application for Supplemental Security Income (SSI).  This case is before the Court, with the consent of the parties, *see* 28 U.S.C. § 636(c), *see also* Joint Consent of the Parties (Doc. #5), on Plaintiff's Statement of Errors (Doc. #14), the Acting Commissioner's Memorandum in Opposition (Doc. #18), Plaintiff's Reply (Doc. #19), and the administrative record (Doc. #11). For the reasons that follow, the Court affirms the Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Order 22-01.
[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

I.      **Procedural History**

Plaintiff filed his current application[3] for benefits on July 21, 2017, alleging disability due to several impairments, including a "back condition, nerve damage in left leg, can't read too well, mental conditions, and drug addictions." (Doc. #11, PageID# 262). The application was denied initially and upon reconsideration, and Plaintiff requested a *de novo* hearing before an administrative law judge. On June 7, 2019, Administrative Law Judge Stuart Adkins ("ALJ") conducted a hearing, at which Plaintiff testified, as did a vocational expert. *Id.* at 67-92. On July 29, 2019, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920.[4]

> Step 1: Plaintiff has not engaged in substantial gainful employment since July 21, 2017, the application date.
>
> Step 2: He has the severe impairments of Degenerative Disc Disease (DDD), Post-Traumatic Stress Disorder (PTSD), Depressive Disorder, and Personality Disorder.

---

[3] Plaintiff previously applied for benefits in October 2011. This claim was denied by decision dated April 2, 2013. (Doc. #11 at PageID#s 94-114).

[4] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:
> 1. Is the claimant engaged in substantial gainful activity?
> 2. Does the claimant suffer from one or more severe impairments?
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
> 4. Considering the claimant's residual functional capacity, can the claimant perform her past relevant work?
> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

20 C.F.R. §§ 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

| | |
|---|---|
| Step 3: | He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | His has the residual functional capacity (RFC), *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), to perform "light work… subject to the following limitations: (1) never climb ladders, ropes, and scaffolds; (2) occasionally stoop, kneel, crouch, and crawl; (3) frequently climb ramps and stairs, and balance; (4) avoid unprotected heights; (5) able to perform routine tasks, but not at a production-rate pace and without strict production quotas; (6) able to have occasional interaction with supervisors and co-workers, but no interaction with the general public; (7) no jobs requiring teamwork or tandem tasks; and (8) able to tolerate occasional changes to a routine work setting defined as 1-2 per weeks."<br><br>He is unable to perform his past relevant work as a roofer or a forklift operator. |
| Step 5: | His RFC, combined with his vocational profile, would permit him to perform a significant number of jobs that exist in the national economy. |

(Doc. #11, PageID #s 50-60). Based on these findings, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. *Id.* at 60. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on May 27, 2020. *Id.* at 33-38.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #11, PageID #s 50-53, 55-56), Plaintiff's Statement of Errors (Doc. #14), the Acting Commissioner's Memorandum in Opposition (Doc. #18). To the extent that additional facts are relevant, they will be included in the Court's discussion.

### I. Standard of Review

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's decision denying disability benefits is limited to whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). The United States Supreme Court has explained the substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted).

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen,* 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**III.   Discussion**

Plaintiff argues that the ALJ erred in determining Plaintiff's RFC and committed reversible error in evaluating the medical source opinions and the medical record. (Doc. #14, PageID # 887-93).[5] In response, the Acting Commissioner maintains that the ALJ's decision is supported by substantial evidence and complied with all applicable standards. (Doc. #18, PageID # 905-13).

A claimant's RFC is an assessment of the most that a claimant can still do despite his limitations. 20 C.F.R. § 416.945(a)(1) (2012).  A claimant's RFC assessment must be based on all the relevant evidence in the case file.  *Id.*  The governing regulations[6] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 416.913(a)(1)-(5).  With regard to two of these categories—*i.e.,* medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific

---

[5] Although the ALJ found that Plaintiff suffers from both severe mental and physical impairments, Plaintiff addresses only the ALJ's evaluation of the medical record and opinions relating to his physical impairments and the finding that Plaintiff has the RFC for a limited range of light exertion.

[6] Plaintiff's application was filed after March 27, 2017. Therefore, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20 C.F.R. §§ 416.913(a), 416.920c (2017).

evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." § 416.920c(c)(1)–(5). Of these five factors, supportability and consistency are the most important, and the ALJ must explain how these factors were considered. § 416.920c(b)(2). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(1). As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(2).

The record in this case reflects the relevant opinions of three physicians: Ugo Nwokor, M.D., Plaintiff's treating physician, and Leslie Green, M.D., and Anne Prosperi, D.O., the state agency reviewing physicians. Dr. Nwokoro completed a medical assessment on April 23, 2019. (Doc. #11, PageID # 726-30). Findings on clinical examination included positive straight leg

raising and an inability to bend or flex his spine. *Id.* at 728. According to Dr. Nwokoro, Plaintiff could carry up to 5 pounds occasionally, could stand and walk for ¼ hour without interruption, for a total of one hour throughout an 8-hour workday, and could sit for ¼ hour without interruption, for a total of two hours throughout an 8-hour workday. *Id.* at 726-27. Plaintiff could never climb, balance, stoop, crouch, kneel, or crawl and Plaintiff's ability to safely see, reach, handle, finger, feel, and push/pull were affected by his intermittent blurry vision, poor balance, and cervical and lumbar radiculopathy. *Id.* at 728. Plaintiff would also be limited in his ability to work around heights, moving machinery, chemicals, temperature extremes, vibration, dust, fumes, and humidity. *Id.* According to Dr. Nwokoro, Plaintiff would be "unable to tolerate or function in any work environment, not even part-time." *Id.* at 730.

The ALJ found Dr. Nwokoro's opinion to be, "at most, somewhat persuasive." (Doc. #11, PageID # 55). According to the ALJ, the "extreme findings of Dr. Nwokoro are not consistent with the medical records, or even Dr. Nwokoro's own treatment notes." *Id.* at 55-56.

> For instance, Dr. Nwokoro notes blurry vision. However, there is no instance in the medical record of the claimant experiencing blurry vision (B1F-B23F). Dr. Nwokoro notes a restriction against pulmonary irritants, but there is no instance in the medical record of pulmonary issues (B1F-B23F). Dr. Nwokoro's own treatment notes indicate his spine is noted to be normal, with a full range of motion, no sciatica, or depression of ability to sense temperature or touch, no chronic pain, and normal strength of 5/5 bilaterally in the lower extremities (B22F/30). Other treatment notes indicate, he drove back and forth to New York, does work around his house, rides a bike, and wants to start doing weight training (B23F/14-15).

*Id.* at 56.

Dr. Green reviewed the medical evidence on September 20, 2017, and opined that Plaintiff could perform light exertional work. (Doc. #11, PageID# 128-30). According to

Dr. Green, Plaintiff could frequently climb ramps and stairs, was unlimited in his ability to balance, could never climb ladders, ropes or scaffolds, and could occasionally stoop, kneel, crouch, or crawl. *Id.* at 129. In January 2018, Dr. Prosperi reconsidered the record and affirmed Dr. Green's opinions except that, according to Dr. Prosperi, Plaintiff could only frequently balance and should avoid all exposure to environmental hazards. *Id.* at 147-49.

The ALJ found the opinions of Dr. Green and Dr. Prosperi to be persuasive, noting that they based their opinions upon their examination of the record and their expertise. *Id.* at 56. The ALJ also stated:

> The undersigned agrees with Dr. Green and Dr. Prosperi that the claimant is capable of light exertional work, due to the claimant's ability to do other functional activities such as driving back and forth to New York, doing work around his house, riding a bike, and wanting to start doing weight training (B23F/14-15).

(Doc. #11, PageID#56).

Plaintiff objects to the ALJ's evaluation of Dr. Nwokoro's opinion. First, Plaintiff complains that the ALJ failed to recognize Dr. Nwokoro as Plaintiff's treating physician. (Doc. #11, PageID# 23)("Ugo Nwokoro, M.D., a physician, examined the claimant and assessed his physical functioning."). However, although the ALJ did not expressly characterize Dr. Nwokoro as a treating physician, the ALJ expressly referred to this doctor's treatment notes. *Id.* at 24. Considering that the revised regulations no longer require that preference be given to the opinions of treating providers, *see* 20 C.F.R. § 416.920c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including

controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"), any failure on the part of the ALJ to expressly characterize Dr. Nwokoro as a treating physician is immaterial.

The ALJ also found that Dr. Nwokoro's extreme opinion was not supported by his own treatment notes. (Doc. #11, PageID # 23-24). This Court agrees. For example, Dr. Nwokoro noted, on more than one occasion, that Plaintiff's spine is "normal," that he has a "full [range of motion] with no sciatica, or depression of ability to sense temperature or touch, does report chronic pain, but not tender to touch, . . . strength is normal bilaterally legs and arms 5/5." *Id*. at 741, 744, 748, 751, 753, 756. Moreover, a fair reading of the ALJ's decision also supports the ALJ's assessment that Dr. Nwokoro's extreme assessment of Plaintiff's ability to engage in work-related activities is inconsistent with not only the opinions of the state agency reviewing physicians, but also the entire medical record. As the ALJ summarized:

> The record reflects that the claimant complains of neck and back pain, which radiates down his left leg (B23F/1). Imaging reflects that the claimant suffers from DDD of the lumbar spine (B4F, B15F/1, B22F/1). The claimant complains that he cannot sleep or doing anything due to pain (B23F/6-7). The claimant presents as antalgic to the right and complains of a restricted range of motion (B23F/13). The claimant was sent to physical therapy several times, and treatment notes reflect decreased muscle strength (4/5) in the spine and [hips], and lower extremities (B16F/5). However, the claimant rarely attended psychical [sic] therapy, and while in therapy, would often give excuses as to why he could not perform exercises (B11F/12, B16F/22). However, his physician notes that despite the claimant's pain complaints and back spasms, his spine is noted to be normal, with a full range of motion, no sciatica, or depression of ability to sense temperature or touch, no chronic pain, and normal strength of 5/5 bilaterally in the lower extremities (B22F/30). The claimant is noted as using a walking cane in late 2018 and early 2019 (B19F/48, B22F/38). Regardless, the claimant was noted as doing well, when in treatment, and when compliant (B22F/15). The claimant also demonstrates functional abilities that are not in line with his subjective

>complaints. For instance, he drove back and forth to New York, does work around his house, rides a bike, and wants to start doing weight training (B23F/14-15).
>
>The claimant was sent to pain management for his continued complaints of back pain. Unfortunately, it was noted that the claimant's drug abuse affects his pain perception (B19F/2). There are references in medical records to apparent drug-seeking behavior. For example, the claimant is noted as asking for pain medication, and having an extreme opioid focus and aberrant drug behavior (B3F/2, B33F/58, 66). The claimant was non-compliant with his pain management treatment, refusing to have his labs run, and admitting "I have not taken my Gabapentin like I'm supposed to," and testing positive for cocaine, marijuana, Percocet, Xanax, OxyContin and other drugs on his toxicology screening (B16F/5, B17F/1, B19F/9, B22F/8, 53, 58, 66, 69-70, 86). The claimant was also caught trying to substitute someone else's urine for his own (B22F/82).

*Id*. at 50-51. In the view of this Court, the record contains evidence sufficient to support the ALJ's evaluation of Dr. Nwokoro's opinion and the ALJ sufficiently explained his evaluation of that opinion.

**WHEREUPON**, the decision of the Commissioner is **AFFIRMED**. The Clerk is **DIRECTED** to enter **FINAL JUDGMENT**, pursuant to Sentence 4 of 42 U.S.C. § 405(g), and to terminate this case on the Court's docket.

March 28, 2022                                       *s/ Norah McCann King*
                                                                    Norah McCann King
                                                                    United States Magistrate Judge